UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


UNITED STATES                                    CIVIL ACTION

VERSUS                                           NO: 11-290

BYRON PATRICK GLOVER                             SECTION: R


**ORDER AND REASONS**

Defendant Byron Glover moves the Court to suppress evidence
that he contends was discovered pursuant to an illegal search. He
also moves the Court to sever his trial from that of codefendant
Falan Brasseaux. For the following reasons, the Court denies both
motions.


I.    **BACKGROUND**[1]

On October 28, 2011, agents of the Phoenix Drug Enforcement
Agency (DEA) contacted DEA New Orleans and relayed information,
obtained from a "credible and reliable" confidential source, that
a courier was transporting a large quantity of cocaine in a Range

---

[1]    This factual background takes information from two
sources: (1) the affidavit of Detective Jules Martin, a task
force agent with the New Orleans Field Division of the Drug
Enforcement Agency ("DEA"), offered in support of the DEA's
application for a search warrant of Glover's residence; and (2)
the affidavit of Special Agent Mark Nicholson, also with New
Orleans DEA, offered in support of the criminal complaint brought
against Glover. Minor immaterial inconsistencies in the two
affidavits are ignored.

Rover from Arizona to Louisiana.[2] The Phoenix agents provided the
New Orleans agents with a description of the auto and its license
plate number, and advised the New Orleans agents that a courier
driving the same car had arrived in New Orleans several weeks
earlier, spent the night at the Hampton Inn at 2730 North
Causeway Boulevard in Metairie, Louisiana, and departed in the
early morning hours for an unknown residence on the 6800 or 6900
block of Fleur De Lis Drive in New Orleans.[3] At 4:55 p.m. on
October 28, agents with DEA New Orleans observed the subject
Range Rover parking in the lot of the Metairie Hampton Inn and an
unknown Hispanic male exit the driver's side door and walk out of
view.[4] Agents surveilled the car through the night.[5]

At 7:10 a.m. the next morning, agents observed the same
Hispanic male enter the Range Rover, depart the garage, and drive
down Veteran's Boulevard in Metairie and onto Fleur De Lis Drive
in New Orleans.[6] Agents lost sight of the Range Rover by the 6800
block of Fleur De Lis Drive, but they noticed that the residence
at 6811 Fleur De Lis Drive had a single car garage with the door

---

[2]     R. Doc. 56-2 at 4.

[3]     *Id.*

[4]     R. Doc. 1 at 2.

[5]     R. Doc. 56-2 at 4.

[6]     *Id.*

closed.[7] The agents maintained surveillance on the closed garage, and at 7:32 a.m., the garage door opened and the Range Rover backed out the driveway and traveled north, out of surveillance view.[8] As the car drove away, an unknown male (later identified as Byron Glover) walked out of the garage and closed the garage door behind him.[9] Glover entered a silver four door sedan parked on the curb outside the residence and drove away.[10] Agents observed him using his cell phone while he circuitously maneuvered through the neighborhood, ostensibly to elude surveillance.[11] The agents lost sight of Glover soon thereafter.

While several agents were following Glover, others maintained surveillance at the 6811 Fleur De Lis Drive residence.[12] At about 7:55, these agents saw an adult female (later identified as Falan Brasseaux) quickly leave the residence with a child and enter a silver Honda Accord across the street from the residence.[13] Brasseaux drove the car down the driveway, reentered the residence and returned to the car with an unknown

---

[7]    *Id.*

[8]    *Id.* at 5.

[9]    *Id.*

[10]    *Id.*

[11]    *Id.*

[12]    *Id.*

[13]    *Id.*

object, and drove away.[14]

Believing that Glover had observed the surveillance and called Brasseaux to warn her, agents performed an investigatory stop of Brasseaux's car.[15] During the detention, Brasseaux told the agents that she had just visited a friend at the 6811 Fleur De Lis Drive residence to retrieve items for her baby.[16] She identified her friend as Byron Glover and gave the officers a key to the residence when they asked for one.[17] According to Special Agent Nicholson's affidavit supporting the criminal complaint, it was at this time that the agents decided to secure the residence and apply for a search warrant.[18]

At around 8:05, the agents returned to the residence and entered using the key that Brasseaux had provided.[19] Inside, they conducted a protective sweep of the residence, during which they observed two large wooden bench seats with removable lids in the kitchen that were large enough to conceal a person.[20] Agents lifted the lids and discovered, in plain view, several duct taped

---

[14]  *Id.*

[15]  *Id.*

[16]  R. Doc. 1 at 4.

[17]  R. Doc. 56-2 at 5.

[18]  R. Doc. 1 at 4-5.

[19]  R. Doc. 56-2 at 5.

[20]  *Id.*

brick-shaped objects consistent with the packaging of large quantities of narcotics.[21] The agents closed the lid and continued their protective sweep without locating any occupants.[22]

After the sweep, agents maintained security of the residence while another completed his application for a state search warrant.[23] He included a description of the packages, suspected to be narcotics, in the warrant application.[24] At 10:38 a.m., Orleans Parish Criminal District Court Magistrate Commissioner Jonathan Friedman signed a search warrant authorizing the search of the residence.[25] At 10:40, agents executed the warrant and seized the four brick-shaped objects containing nearly six kilograms of heroin.[26] They seized other non-drug evidence from the residence, as well, including nearly six thousand dollars in US currency, five empty bottles of narcotic cutting agent, a digital scale, mail addressed to Byron Glover at the 6811 Fleur De Lis Drive address, and a letter from the Louisiana Department

---

[21]    *Id.*

[22]    R. Doc. 1 at 5.

[23]    R. Doc. 56-2 at 5.

[24]    *Id.*

[25]    *Id.* at 6.

[26]    R. Doc. 1 at 5. The substance initially field tested positive for cocaine, but upon further testing by the DEA lab, it was confirmed to be heroin, not cocaine.

of Corrections that was addressed to Glover.[27] Glover initially was arraigned on charges of conspiracy with intent to distribute cocaine.[28] But after subsequent testing confirmed that the drug was heroin and not cocaine, the Federal Grand Jury returned a superseding indictment charging Glover (and this time, Brasseaux) with conspiracy to possess more than one kilogram of heroin, and possession with intent to distribute the same.[29]

Glover now moves to suppress the evidence.[30] He also moves the Court to sever his trial from that of his codefendant Brasseaux.[31] The Government opposes both motions.

## II.  MOTION TO SUPPRESS

As an initial matter, neither the Government nor Glover has requested an evidentiary hearing, and the Court finds that it is unnecessary to hold one to rule on Glover's motion to suppress. "[A]n evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). As there are no factual issues in dispute that are material to

---

[27]    *Id*. at 5-6.

[28]    R. Docs. 8, 10.

[29]    R. Doc. 20.

[30]    R. Doc. 56.

[31]    R. Doc. 51.

defendant's motion,[32] the Court will resolve the motion to suppress on the briefs. *See United States v. Kirk*, 528 F.2d 1057, 1064 (5th Cir. 1976) (finding that it was appropriate for trial court to decide suppression motion without an evidentiary hearing when the issue was one of law).

In his motion, Glover contests the legality of the investigatory stop of Brasseaux, the warrantless entry into his home, and the protective sweep of the residence.[33]

## 1.  The Stop of Brasseaux

Glover first challenges the legality of the stop and detention of Brasseaux. The Court need not consider his arguments because Glover may not challenge the allegedly unconstitutional seizure of another person.

The Fourth Amendment is "a personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). A defendant must show a violation of "his (and not

_____

[32]     To the extent that the timing of the DEA agents' decision to seek a search warrant is relevant and in dispute, Glover *does not* contend that the decision came after the warrantless entry into Glover's house, which, if true, would affect the Court's analysis. *See infra.* Exactly when the agents *actually* began to prepare the warrant application (which Glover discusses) and when they *decided* to do so (which Glover does not discuss) are different inquiries.

[33]     Glover also argues in his motion that Brasseaux did not give consent to search her home. As the Government does not rely on consent to search in order to justify its warrantless entry, the Court need not discuss Glover's arguments on this score.

someone else's) Fourth Amendment rights[.]" *Id.* What once was examined under the rubric of standing doctrine is no longer thought distinct from the merits of a defendant's Fourth Amendment claim, and courts now are to ask whether the movant seeking suppression has "capacity to claim the protection of the Fourth Amendment." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

The case law primarily concerns one's right to contest the search, rather than the seizure, of the person or effects of another. Nevertheless, "it is clear that one person lacks standing to object to the seizure of another (just as one person lacked standing to object to the search of another person)." Wayne R. LaFave, 6 *Search and Seizure: A Treatise on the Fourth Amendment* § 11.3 (4th ed.); *see also United States v. Swift*, 220 F.3d 502, 510 (7th Cir. 2000) (finding defendant without capacity to challenge the illegal arrest of a co-felon, and thus, unable to suppress evidence discovered as a result of that arrest); *United States v. Marrocco*, 578 F.3d 627, 632 n.4 (7th Cir. 2009) ("Mr. Marrocco does not have standing to claim that the officers impermissibly detained Mr. Fallon."); *Ross v. Duggan*, 402 F.3d 575, 587 (6th Cir. 2004) ("[Because] no plaintiff had standing to assert any alleged violation of the constitutional rights of a different individual[,] ... Judy Lewis lacked standing to seek redress for the alleged wrongful arrest of her son[.]").

In this case, Glover may not seek suppression of evidence

that resulted from an allegedly unconstitutional arrest of Brasseaux because the alleged arrest did not infringe upon *Glover's* Fourth Amendment rights. *See United States v. Padilla*, 508 U.S. 77, 81 (1993) ("It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure.").

## 2.    Warrantless Entry and Protective Sweep

Glover next challenges the Government's warrantless entry into his home and the agents' sweep of the residence. Warrantless searches and seizures inside a home are presumptively unreasonable under the Fourth Amendment. *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). But the "presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness." *Id.* (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quotations omitted). When exigent circumstances prevent officers from obtaining a warrant, an entry into another's home, made with probable cause but without a warrant, may be justified. *United States v. Riley*, 968 F.2d 422, 424 (5th Cir. 1992); *United States v. Mata*, 517 F.3d 279, 287-88 (5th Cir. 2008). Circumstances giving rise to the exigency exception to the warrant requirement include the hot pursuit of a

fleeing felon, imminent destruction of evidence, a need to prevent a suspect's escape, or the risk of danger to the police or to other people inside or outside the dwelling. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990). And in assessing whether the warrant requirement will yield to an asserted exigency, the Fifth Circuit considers the following factors: (1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) a reasonable belief that contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the contraband's possessors know police are on their trail; and (5) the ready destructibility of the contraband. *United States v. Menchaca-Castruita*, 587 F.3d 283, 289-90 (5th Cir. 2009). It is the Government's burden to prove that the exigency existed. *Id.* at 289 (citing *United States v. Rodea*, 102 F.3d 1401, 1405 (5th Cir. 1996)).

In this case, the Government supports its argument that exigent circumstances justified the warrantless entry with the following facts:

- During the surveillance, the courier left the residence alone.

- Moments later, Glover left the residence and was followed by DEA agents. He drove randomly through the neighborhood while talking on his cell phone, leading the agents to believe that Glover had discovered the surveillance and was alerting Brasseaux and others who might have been in the house.

- Brasseaux exited the residence with her small child and got

into her car, drove the car into the driveway, reentered the house to retrieve an item, and then drove away.

Based on these observations alone, the Government contends that there was a "clear possibility" that a co-conspirator was inside the residence and capable of destroying the evidence absent immediate action from the agents. But in order to demonstrate exigent circumstances, the Government must point to more than a mere possibility of the presence of persons in a residence. *Id.* at 295-96 ("A finding of exigent circumstances ... must be based on an officer's reasonable belief that the delay necessary to obtain a warrant will facilitate the destruction or removal of evidence or put officers or bystanders in danger."). Rather, the Fifth Circuit finds exigent circumstances present when the Government demonstrates that agents had actual knowledge of other persons inside a residence. *See Mata*, 517 F.3d at 289 (before warrantless entry, agents "knew with absolute certainty" that contraband was in the building and witnessed several people running in different directions around the building); *Riley*, 968 F.2d at 425 (warrantless entry was reasonable when accomplice told agents that "there was a large sum of money, a handgun and another individual at the residence he had just left"); *United States v. Maldonado*, 472 F.3d 388, 392 (5th Cir. 2006) (agents observed "someone open the trailer door, peek out, and then quickly close the door" before they initiated the protective sweep). Or, in the absence of *actual* knowledge, the Government

may demonstrate the exigency by showing that agents heard or saw movement *suggesting* the presence of other persons in the residence. *See United States v. Ibarra-Zelaya*, 465 F.3d 596, 605 (5th Cir. 2006) (before warrantless entry, officer heard "multiple people moving around inside the apartment" and "observed several people fleeing the apartment via the balcony").

In this case, however, agents monitored Glover's residence from the time the drug courier arrived to the time the agents entered the residence. In that time, no one entered the home who did not subsequently leave. During the agents' conversation with Brasseaux, in which they perceived her to be "evasive" and "not forthcoming" about her whereabouts immediately preceding the stop, she gave no indication that others were inside the 6811 Fleur De Lis residence. Further, the Government has presented no evidence that the surveilling agents saw lights, heard movement, or noticed anything else to indicate that others might have remained in the residence.

The few agent observations to which the Government points do not support the suspicion that the residence was occupied after Brasseaux left. That the courier left the residence alone may suggest that he left others on the premises, but once the agents observed two other adults leaving, they no longer had cause to suspect that others remained inside. Further, that Glover might have become aware of the surveillance does not increase the

likelihood that another person, about whom the agents were unaware, was inside the residence. Finally, that Brasseaux went briefly back inside the house to gather some unknown item also does not increase the likelihood that others might have been inside the residence and able to hide, destroy, or abscond with the drugs.

The Court finds *Menchaca-Castruita* instructive here. In that case, a police officer responding to a landlord-tenant dispute smelled marijuana inside the front door of the tenant's residence (the tenant had fled before the officer arrived, leaving the door ajar). 587 F.3d at 286. When the officer arrived, the landlord on the scene reported that the tenant was the only person she saw when she looked through his window. *Id.* There were no sounds coming from inside the residence, nor any other indications that another person might have remained inside. *Id.* Nevertheless, the officer, without a warrant, pushed open the front door and entered the residence. *Id.* Because the "police officer had no articulable reason to believe that someone else might be inside [the] residence posing a threat to the officer or the bystanders, or that any evidence was at risk of destruction or removal[,]" the Government's asserted exigency was insufficient to justify the warrantless entry. *Id.* at 295-96. As in *Menchaca-Castruita*, the Government in this case has not presented any evidence demonstrating a reasonable basis for the agents to believe that

13

there was anyone inside Glover's residence. Consequently, the warrantless entry cannot be justified by exigent circumstances.

Because the *entry* was illegal, so, too, was the protective sweep. Agents can "perform cursory 'protective sweeps' of large areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched." *Mata*, 517 F.3d at 285 (citing *Maryland v. Buie*, 494 U.S. 325, 334 (1990)). But for a protective sweep to be justified, the agents "must have entered [the location] legally and for a legitimate law enforcement purpose[.]" *Id.* at 286 (citing *United States v. Gould*, 364 F.3d 578, 587 (5th Cir. 2004). Indeed, the Fifth Circuit has noted that "it is at least implicit in *Buie* that ... the police must not have entered (or remained in) the home illegally[.]" *Gould*, 364 F.3d at 587. In a footnote, the Court noted "[w]hether (or if so to what extent and under what conditions) the doctrine of 'protective sweep' authorizes a warrantless, non-consensual *entry into* a home that would *not* be authorized under the more general doctrine of 'exigent circumstances' is unclear." *Id.* at 587 n.9. The Court will not speculate absent further directive from the Fifth Circuit or the Supreme Court.

**3.   Independent Source**

14

Finding the warrantless entry and sweep constitutionally invalid does not end the inquiry. Under the independent source exception to the exclusionary rule, "information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source." *United States v. Hearn*, 563 F.3d 95, 102 (5th Cir. 2009) (citing *Murray v. United States*, 487 U.S. 533, 538-39 (1988)). Seizure of evidence pursuant to a warrant may satisfy the independent source exception, resulting in the admission not only of evidence seen for the first time during the lawful search, but also "evidence seen in plain view at the time of the warrantless search." *Id.* (citing *Murray*, 487 U.S. at 541-42).

In this case, the affidavit supporting the agents' warrant application discussed the brick-shaped objects, believed to be narcotics, that were found concealed inside the bench. Because this evidence was obtained pursuant to an illegal search, the Government must demonstrate that the subsequent lawful search was "genuinely independent" of the earlier warrantless search. To do so requires the Government to show "(1) that the police would still have sought a warrant in the absence of the illegal search; and (2) that the warrant would still have been issued (*i.e.*, that there would still have been probable cause to support the warrant) if the supporting affidavit had not contained information stemming from the illegal search." *United States v.*

*Runyan,* 290 F.3d 223, 235 (5th Cir. 2002).

The affidavit of DEA agent Mark Nicholson establishes that the agents decided to apply for a search warrant after speaking with Brasseaux during the investigatory stop and *before* they unlawfully entered the 6811 Fleur De Lis Drive residence.[34] *Cf. Hearn*, 563 F.3d at 102 ("[B]ecause the officers had begun preparing the search warrant application well before their purported illegal entry ... it is clear that information obtained during the purported illegal entry did not motivate the officers to seek the warrant."); *United States v. Getachew*, 364 Fed. Appx. 931, 933-934 (5th Cir. 2010) (officer who executed the warrant testified that the warrant was sought based on the responding officers' plain-view observations of scales and marijuana residue and the odor of marijuana in the residence – evidence untainted by an illegal protective sweep).

So, too, is the second element of the test satisfied here. In order to establish that the warrant would still have been issued even without reference in the supporting affidavit to information derived from the illegal search, the Government need not provide subjective proof that the magistrate in fact would have issued the warrant without that evidence. *See Runyan*, 290

---

[34] *See* R. Doc. 1 at 3-4 ("At this time, agents decided to secure 6811 Fleur De Lis Drive, New Orleans, Louisiana to prevent the destruction of evidence *and apply for a search warrant*.") (emphasis added).

16

F.3d at 236 (citing *United States v. Restrepo*, 966 F.2d 964, 970 (5th Cir. 1992)). Rather, it must show only that, purged of taints, the warrant contained sufficient evidence to constitute probable cause for its issuance. *Id.* If the Government meets its burden, the taint is removed from the warrant, and the evidence seized pursuant to the warrant need not be suppressed. *See id.* at 237.

Thus, the relevant inquiry is whether the warrant affidavit, purged of all references to illegally obtained evidence, was sufficient to provide probable cause. "A probable cause determination is a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Thomas*, 627 F.3d 146, 159 (5th Cir. 2010) (internal quotation marks and citation omitted). And, following *Illinois v. Gates*, 462 U.S. 213 (1983), a magistrate is to look to the totality of the circumstances in making this determination.

When information supporting the probable cause inquiry comes from an informant's tip, as is the case here, the magistrate is to conduct a "balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip[.]" *Id.* at 234. The Supreme Court has "consistently recognized the value of corroboration of details of

an informant's tip by independent police work" in cases like this. *Id.* at 241 (citing *Jones v. United States*, 362 U.S. 257, 269 (1960); *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964)). For example, in *Gates*, the Bloomington, Illinois Police Department received an anonymous letter indicating that husband and wife respondents were engaged in selling drugs; that the wife would drive their car from Illinois to Florida on a specific date to load with drugs, and the husband would fly down in a few days to drive the car back; that the car's trunk would be loaded with drugs; and that respondents had over $100,000 worth of drugs in their basement. *Gates*, 462 U.S. at 225. Acting on the tip, an officer identified the Gateses' address and learned that the husband had reserved a seat on a flight to Florida. Surveillance disclosed that the husband in fact took the flight, stayed overnight in a motel room registered in the wife's name, and left the following morning with a woman in a car bearing an Illinois license plate issued to the husband. *Id.* at 225-27. The Court held that the partially corroborated anonymous informant's tip provided probable cause validating the magistrate's issuance of the warrant to search the Gateses' car and house.

The *Gates* Court also discussed its decision in *Draper v. United States*, 358 U.S. 307 (1959), "the classic case on the value of corroborative efforts of police officials." *Gates*, 462 U.S. at 242. In *Draper*, an informant reported that a man would

18

arrive in Denver on a train from Chicago on one of two days and that he would be carrying a quantity of heroin. *Draper*, 358 U.S. at 309. The informant also supplied a detailed physical description of the man and predicted that he would be wearing a light colored raincoat, brown slacks, and black shoes, and that he would be walking "real fast." *Id.* The informant gave no indication of the basis for his information. On one of the stated dates, officers observed a man exit a train arriving from Chicago who matched the informant's description of the suspect's physical attributes, clothing, luggage, and pace. *Id.* at 309-10. By this point in his investigation, the arresting officer "had personally verified every facet of the information given him," and "with every other bit of [the informant's] information being thus personally verified," the Court found that the officer had probable cause to believe that Draper would have heroin with him, as the informant had suggested. *Id*. at 313. The warrantless arrest, and the search of Draper's person incident to that arrest, were therefore held to be constitutional.

This case is consistent with *Gates* and *Draper*. Purged of any tainted information, the affidavit supporting the warrant application indicated the following: The DEA's Phoenix office informed DEA New Orleans that members of a known Phoenix area drug trafficking organization would transport a large quantity of illegal drugs to the New Orleans area and deliver it to a

residence on Fleur De Lis Drive. DEA Phoenix provided DEA New Orleans with the model, year, and license plate number of the suspect vehicle. It further advised that the same courier had arrived in New Orleans several weeks earlier, spent the night at the Hampton Inn at 2730 North Causeway Boulevard in Metairie, Louisiana, departed in the early morning hours for an unknown residence on the 6800 or 6900 block of Fleur De Lis Drive in New Orleans, and remained there for about 30 minutes before driving back to the Phoenix area.

On October 28, 2011, DEA Phoenix alerted DEA New Orleans when it learned that the suspect vehicle was approaching the Hampton Inn as expected. DEA New Orleans began surveillance of a car identical to the one described. The courier behaved exactly as expected – spending the night in the Hampton Inn, departing at 7:10 a.m. for a residence on the 6800 block of Fleur De Lis Drive, and leaving the residence about 30 minutes later. As the courier backed the Range Rover out of the garage, the agents observed Glover walk out the garage and close the door behind him. When they followed him, they observed him randomly circle the neighborhood as if checking for surveillance.

Even without the information in the affidavit concerning contraband in the residence, the tip from DEA Phoenix, when corroborated by agents with DEA New Orleans, provided probable cause that contraband would be found in the residence. *Cf. Gates*,

462 U.S. at 225-46. This is so even though the informant upon whose information DEA Phoenix's tip was based is unnamed in the warrant affidavit and merely described as "credible and reliable." *See United States v. Shaw*, 396 Fed. Appx. 145, 146 (5th Cir. 2010) (affidavit containing tips from confidential informants supported magistrate's finding of probable cause when the affidavit described the informants as having provided information "proven true, correct, and reliable in past"); *United States v. McKnight*, 953 F.2d 898, 904-05 (5th Cir. 1992) ("Constable's assertion that the confidential informant was 'reliable' and had 'furnished him with information in the past that has proved to be reliable and true' provided the magistrate with sufficient indicia of the reliability and veracity of the informant's tip."); *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992) (approving of an affidavit that "provided the magistrate with facts, and not mere conclusions"); *Christian v. McKaskle*, 731 F.2d 1196, 1200 (5th Cir. 1984) (noting that "a factual basis for the credibility of an informant can be supplied by an explicit claim of past reliability[.]") (internal quotation marks omitted).

Glover does not discuss the independent source doctrine in the briefs supporting his motion. Rather, he relies on *United States v. Richard*, 994 F.2d 244 (5th Cir. 1993), for the proposition that police may not delay seeking a warrant in order

to engage in investigatory activities that are likely to create an exigency. Although there was a time when the Court first would have asked whether the agents' investigatory tactics provoked the exigent circumstances, the Supreme Court has since held that exigent circumstances may justify a warrantless entry so long as "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." *Kentucky v. King*, 131 S. Ct. 1849, 1858 (2011); *see also id.* at 1859-61; *United States v. Aguirre*, 664 F.3d 606, 611 (5th Cir. 2011) (explaining *King's* effect on the Fifth Circuit's holding in *Richard*). Because Glover has not argued that the agents' surveillance (the discovery of which is what led to the asserted exigency) violated the Fourth Amendment, his argument is not supported by the case law.

Furthermore, *Richard* would have proven helpful to Glover only insofar as he argues that the warrantless entry was not justified by exigent circumstances (a conclusion this Court has already reached). But in *Richard*, the agents conceded that they had only reasonable suspicion, and not probable cause, when they approached the motel room to try to locate their suspect. *Richard*, 994 F.2d at 248. Consequently, "they did not seem to have considered a warrant a possibility." *Id.* Here, however, the agents decided to seek a search warrant *before* entering Glover's residence, and indeed, that warrant would have been granted even

22

without reference to the drugs discovered upon the illegal search of the residence. *Richard* is thus inapposite.

Because the agents would have sought a warrant even had they never conducted the illegal search, and because the warrant would have been supported by probable cause, the Court concludes that the drugs and other items were obtained through an independent source – the post-warrant search. As such, they need not be suppressed.


## III. MOTION TO SEVER

Federal Rule of Criminal Procedure 8(b) permits a court to try defendants together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "As a general rule, persons indicted together should be tried together, particularly when the offense is conspiracy[,]" as it is in this case. *United States v. Simmons*, 374 F.3d 313, 317 (5th Cir. 2004) (citing *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)); *see also* 25-614 *Moore's Federal Practice – Criminal Procedure* § 614.05 (noting that, despite inherent prejudice, joint trial of co-conspirators is favored).

Rule 14, however, provides that a court may order the severance of defendants' trials "if the joinder of offenses or defendants in an indictment, an information, or a consolidation

for trial appears to prejudice a defendant or the government[.]"
Fed. R. Crim. P. 14(a); *see also Zafiro v. United* States, 506
U.S. 534, 538 (1993). But Rule 14 does not *require* severance even
if prejudice is shown. Rather, "it leaves the tailoring of the
relief to be granted, if any, to the district court's sound
discretion." *Zafiro*, 506 U.S. at 538-39. In exercising that
discretion, the district court is to "balance the right of a
defendant to a fair trial against the interests of judicial
economy." *United States v. Zicree*, 605 F.2d 1381, 1388 (5th Cir.
1979). Severance is proper "only if there is a serious risk that
a joint trial would compromise a specific trial right of one of
the defendants, or prevent the jury from making a reliable
judgment about guilt or innocence." *United States v. Mitchell*,
484 F.3d 762, 775 (5th Cir. 2007) (quoting *Zafiro*, 506 U.S. at
539).

In this case, Glover contends that severance is necessary
because his codefendant will provide exculpatory testimony in his
trial if they are tried separately but will exercise her right
against self-incrimination and refuse to take the stand if they
are tried together. *United States v. Butler*, 611 F.2d 1066 (5th
Cir. 1980), provides the criteria for determining whether
severance is proper in order to afford a defendant the benefit of
his codefendant's exculpatory testimony. Under *Butler*, severance
requires the movant to demonstrate: (1) a bona fide need for the

testimony; (2) the substance of the testimony; (3) its
exculpatory nature and effect; and (4) that the codefendant will
in fact testify if the cases are severed. *Id.* at 1071. Upon such
a showing, a court should: (1) examine the significance of the
testimony in relation to the defendant's theory of defense; (2)
assess the extent of prejudice caused by the absence of the
testimony; (3) pay close attention to judicial administration and
economy; and (4) give weight to the timeliness of the motion. *Id.*

Glover has failed to articulate with any detail what the
substance of Brasseaux's testimony will be or why it may
exculpate him. He contends that only if his trial is severed from
Brasseaux's will Brasseaux testify "that she had nothing to do
with the accusations against him nor conspired with him to commit
a drug offense."[35] But there is no indication as to why
Brasseaux's testimony professing *her own* innocence would tend to
exculpate Glover. The factual basis includes a detailed account
of "co-conspirator A" (the narcotics courier) and the events
preceding and following his alleged delivery of the heroin
shipment to Glover's house. Brasseaux's professed innocence does
not impugn Glover's involvement in the alleged conspiracy –
particularly in light of the abundant evidence against him. *Cf.*
*United States v. Browne*, 505 F.3d 1229, 1270 (11th Cir. 2007) (no
compelling prejudice from denial of severance when proposed

---

[35]     R. Doc. 51 at 4.

exonerative testimony from codefendant had been elicited from other witnesses and was more self-exonerating for codefendant than exculpatory of defendant); *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2005) (proffer that codefendant would testify that there was no drug conspiracy was not substantially exculpatory, given the substantial evidence against him); *United States v. Pitner*, 307 F.3d 1178, 1181 (9th Cir. 2002) (testimony is not substantially exculpatory if it refutes only portions of the Government's case but does not affect other evidence sufficient to convict).

Furthermore, Glover has not provided an affidavit or other evidence indicating that Brasseaux would in fact testify if her trial were severed. In this circuit, bare allegations that a codefendant will testify are insufficient. *See United States v. Neal*, 27 F.3d 1035, 1047 (5th Cir. 1994); *United States v. Sparks*, 2 F.3d 574, 583 & n. 10 (5th Cir. 1993); *United States v. Williams*, 809 F.2d 1072, 1084 (5th Cir. 1987).

A defendant requesting severance has "the difficult burden of proving that he will suffer the most compelling prejudice from continued joinder; a mere showing of some prejudice is insufficient." *Zicree*, 605 F.2d at 1388-89. In this case, Glover has failed to provide the facts sufficient to show the compelling prejudice that he claims he will face. His motion to sever is therefore denied.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies both Glover's motion to suppress and motion to sever.


New Orleans, Louisiana, this 16th day of August, 2012.


_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE