UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 11-290 |
| BYRON PATRICK GLOVER | SECTION "R" |

### ORDER AND REASONS

Byron Patrick Glover moves for compassionate release.[1] The Government opposes the motion.[2] Because defendant has not shown that he meets the requirements for compassionate release, the Court denies Glover's motion.

### I.  BACKGROUND

Byron Glover participated in a conspiracy to distribute and possess with the intent to distribute more than one kilogram of heroin.[3] On October 29, 2011, law enforcement officers seized four brick-shaped objects containing a white, powder-like substance from defendant's residence.[4]

---

[1]   R. Doc. 104.
[2]   R. Doc. 106.
[3]   *See generally* R. Doc. 80.
[4]   *Id.* at 4.

Those objects were later determined to be heroin with a purity level of 86% and a net weight of 4990 grams.[5] Glover pleaded guilty to conspiracy to distribute and to possess with intent to distribute one kilogram of heroin.[6] He also pleaded guilty to being a multiple offender.[7] On December 12, 2012, the Court sentenced defendant to 240 months' imprisonment.[8] Glover is incarcerated at Beaumont Low FCI in Texas, with an expected release date of November 16, 2028.[9] He has served 51 percent of his sentence.

Glover now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), citing the COVID-19 pandemic.[10] He represents that he has a body mass index ("BMI") of over 30, an underlying condition that he argues increases his risk of "catastrophic health outcomes" if he contracts COVID-19.[11] He claims that, at the time of filing, there were 475 cases of COVID-19 at Beaumont Low FCI and that the prison contains open-dormitory housing units where 140 inmates live in close quarters.[12]

---

[5] *Id.* at 4, n.4.
[6] R. Doc. 81 at 1.
[7] *Id.*
[8] R. Doc. 102 at 2.
[9] *See* Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited September 17, 2020).
[10] R. Doc. 104.
[11] *Id.* at 4.
[12] *Id.* at 3-4.

Glover also argues, under 18 U.S.C. § 3553(a)(1), that his "history and characteristics" are different now than they were when he was initially sentenced. He states that he has been a model inmate,[13] and represents that he has provided "substantial assistance" to DEA agents, resulting in arrests and convictions.[14] He also contends that the Court should reduce his sentence because, if sentenced today for the same crime, he would face a mandatory minimum sentence of 180 months, rather than the 240-month mandatory minimum that was in place at the time he was sentenced.

Glover's motion specifies how he would like the Court to fashion its compassionate release order. Glover asks the Court to reduce his sentence by 110 months, which is the remainder of his sentence.[15] He first asks that the Court reduce his sentence by 60 months to reflect the reduced mandatory minimum penalty. For what would be the final 50 months of his sentence, he asks that the Court modify his sentence to time served, increase his term of supervised release by 50 months, and order that he serve those months in home confinement.

---

[13]   *Id.* at 5.
[14]   R. Doc. 111 at 4.
[15]   R. Doc. 104 at 7.

3

## II.   DISCUSSION

### A.   Exhaustion

As a threshold matter, Glover satisfied the exhaustion requirement for compassionate release. The statute provides that a district court may grant compassionate release only if the defendant files the motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or, relevant here, after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Glover took the latter route, sending a request for compassionate release to the warden of Beaumont Low FCI on June 23, 2020.[16]  Nothing in the record reflects that the warden responded to this request.  Indeed, the Government agrees that, as of August 6, 2020, the warden had not yet acted on the request.[17]  Because more than 30 days have passed since defendant requested compassionate release from the warden, the Court can assess the merits of Glover's motion for compassionate release.

---

[16]    R. Doc. 104-1 at 1.
[17]    R. Doc. 106 at 4.

## B. Extraordinary and Compelling Reasons

Courts grant compassionate release only when (1) "extraordinary and compelling reasons warrant such a reduction," and (2) "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)-(ii). Glover's request for compassionate release fails to satisfy these requirements.

Defendant relies upon a medical condition and the threat of COVID-19 to assert that there are "extraordinary and compelling reasons" meriting compassionate release. As set out in the relevant policy statement, two categories of medical conditions may satisfy the "extraordinary and compelling reasons" standard. Those include (1) "terminal illness[es]" and (2) serious physical or mental conditions "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, application note 1. Glover contends that he suffers from obesity, which places him at increased risk of severe illness with COVID-19. Specifically, his medical records show that Glover has a body mass index ("BMI") of 30.8 as of March 22, 2016.[18] The Centers for Disease Control and Prevention ("CDC") lists "[o]besity . . . ([BMI] of 30 or higher)" as an

---

[18]  R. Doc. 104-2 at 1.

"underlying medical condition" that puts people of any age at increased risk of severe illness from COVID-19.[19] Glover's BMI barely exceeds the CDC's threshold for obesity.

In terms of the threat of COVID-19, defendant asserts that the facility reported its first case on June 22, 2020, and, by the time he filed this motion on August 3, 2020, there were 475 cases.[20] In its opposition, the Government points to the number of active cases at the institution, claiming that there were 30 inmates and one staff member with the virus as of August 7, 2020—0.016% of the inmate population.[21] In his reply, defendant admits that there were only seven active cases as of August 31, 2020,[22] but contends that the relevant statistic is that 521 inmates, close to one third of the facility's population, have recovered from the virus.[23]

The Court does not find that Glover is entitled to compassionate release. First, courts have given weight to the BOP's "extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Here, the number of active cases at Beaumont

---

[19] Centers for Disease Control and Prevention, *At Risk for Severe Illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.
[20] R. Doc. 104 at 3.
[21] R. Doc. 106 at 2.
[22] R. Doc. 111 at 2, n.1.
[23] *Id.* at 2.

Low FCI has drastically decreased since defendant first filed his motion. Further, few courts have granted compassionate release on the basis that an individual's medical condition increases the risks from COVID-19. *See Mazur*, 2020 WL 2113613, at *4 (collecting cases). Courts have refused to grant compassionate release even where the defendant suffers from a serious medical condition and his facility is experiencing a severe COVID-19 outbreak. *See id.* (denying compassionate release for an inmate with myeloid leukemia and hypertension where 25% of the inmates at his facility tested positive for the virus). Obesity—even in combination with other medical conditions that increase the risk of serious illness—has been held insufficient grounds for compassionate release even with the threat of the pandemic. *See United States v. Takewell*, No. 14-00036, 2020 WL 4043060, at *4 (W.D. La. July 17, 2020). Considering the defendant's 30.8 BMI and the low level of active cases at Beaumont Low FCI, the Court does not find that he satisfies the "extraordinary and compelling reasons" standard.

The heart of Glover's motion is a generalized fear of COVID-19.[24] But generalized fear of the virus does not rise to an "extraordinary and compelling reason" justifying release. *See, e.g.*, *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may

---

24  R. Doc. 106 at 3.

7

spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Marco Perez-Serrano*, No. 13-2, 2020 WL 2754914, at *2 (S.D. Miss. May 27, 2020) ("A generalized fear of contracting COVID-19 does not justify compassionate release."). Thus, defendant has not identified an extraordinary and compelling reason for his release.

Additionally, the Court finds that the factors set out in 18 U.S.C. § 3553(a) do not support a reduction in Glover's sentence. When determining whether to modify a sentencing under Section 3582(c)(1)(A), the Court must "consider[] the factors set forth in section 3553(a)." *See* 18 U.S.C. § 3582(c)(1)(A). Glover contends that considerations under § 3553(a)(1) and (2) weigh in favor of a reduced sentence.

Under § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." Pursuant to § 3553(a)(2), the Court considers "the need for the sentence imposed" to, among other things, "reflect the seriousness of the offense." Glover argues that his crime was a "non-violent, low-level drug conspiracy" and, under the non-retroactive changes in the First Step Act ("FSA"), he would face a 180-month mandatory minimum, not the 240-month mandatory minimum that

8

was in place at the time of his sentencing.[25] He also argues that his post-sentencing conduct demonstrates that his history and characteristics are "dramatically different" than they were when the Court sentenced him.[26] He represents that he has received only one disciplinary citation, has successfully completed several BOP programs, and gets excellent job performance reviews.[27] Glover also argues that he has provided "substantial assistance" to DEA agents by aiding in investigations, resulting in arrests and convictions.[28] The Court has received correspondence, purportedly from retired DEA agent James "Skip" Sewell, attesting to defendant's assistance. Defendant asserts that, if the Court knew about his assistance to the Government at the time of the original sentencing, he may have received a 50 percent sentence reduction.[29]

The Court has considered defendant's arguments and the § 3553(a) factors, and ultimately concludes that they do not weigh in favor of reducing defendant's sentence. Even if defendant would face a lower mandatory minimum sentence today, that does not change the nature or circumstances of his offense or mitigate its seriousness. The factual basis he signed

---

[25]  *Id.* at 4.
[26]  R. Doc. 111 at 4.
[27]  R. Doc. 104 at 5.
[28]  R. Doc. 111 at 4.
[29]  *Id.* at 5.

9

demonstrates that the crime was not "low-level" as defendant represents. According to the factual basis, Glover was directly involved in the distribution of three to ten kilograms of heroin, and Government agents seized $210,000 in connection with the investigation.[30] Additionally, though the Court gives weight to defendant's assistance to law enforcement and his efforts during incarceration to improve himself and prepare for reentry, the Court must also consider his considerable criminal history.[31] After considering the factors under § 3553(a), the Court concludes that they do not weigh in favor of reducing defendant's sentence. Instead, the Court finds that defendant's sentence is appropriate. Defendant's motion for compassionate release must be denied.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion for compassionate release.

New Orleans, Louisiana, this 24th day of September, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[30] *Id.*
[31] R. Doc. 97 at 11-14, ¶¶ 50-59.